The defendant William C. Evans, a farmer, residing in Elk township, Gloucester county, New Jersey, became the owner in 1912 of a farm situate in that township which he afterward occupied and operated. He held the title to this farm continuously from 1912 until 1928. By deed dated September 21st, 1928, he conveyed it to the First National Bank and Trust Company of Woodbury, New Jersey, as trustee, which bank as trustee by deed dated December 7th, 1928, conveyed it to W.C. Evans Company, a New Jersey corporation, which corporation became incorporated on November 3d 1928, for the purpose of holding this farm with some other assets belonging to William C. Evans, and which was conveyed through the trustee to the corporation. This was done because of some differences which Evans had with his wife, the settlement of which differences involved the transfer of this farm in which she had an inchoate right of dower.
The amount of issued capital stock of W.C. Evans Company was $50,000, divided into five thousand shares of $10 each. A certificate of stock was issued to William C. Evans for four thousand nine hundred and ninety-eight shares, and to the other two incorporators for one share each. It is established that William C. Evans was the actual owner of all the stock of the company and that the two other shares issued were intended only as qualifying shares so as to effect the incorporation and provide the necessary officers and directors. These two qualifying shareholders, holding one share each, admitted that they had no actual ownership but held the stock for the benefit of William C. Evans; therefore, William C. Evans was in reality the owner of all the stock in the corporation, holding a certificate for all the shares except two, having a par value of $10 each, of which latter two shares he was the equitable owner.
William C. Evans continued to occupy this farm and operate it in the same way after the conveyance to the bank and *Page 179 
to the corporation as before, it being treated as his own property. He was a member of the Hurfville Grange, Patrons of Husbandry of New Jersey, and he effected insurance with the Farmers Reliance Insurance Company, substituted complainant in this cause. Two policies were issued by the Farmers Reliance Insurance Company, one, No. 35334, for the term of five years from August 6th, 1929, insuring the stock, farming implements, baskets, other containers, c., for the sum of $5,800; the other policy, No. 32672, for the term of five years from February 16th, 1933, in the sum of $10,000, insuring the dwelling house, farm buildings, and also household furniture, c., the latter in the sum of $1,500, leaving the amount of insurance covering on the buildings of $8,500. The latter policy was a renewal of another policy previously written. One of the conditions under which these policies were written was that the insured should be a member in good standing of the Patrons of Husbandry of New Jersey. Mr. Evans was a member in good standing and paid the full amount of premiums on these insurance policies, together with such assessments as he might be called upon to pay from time to time by the insurance company. These insurance policies were never canceled nor the premiums returned.
On July 19th, 1922, William C. Evans executed to the First National Bank and Trust Company of Woodbury, New Jersey, a bond and mortgage in the sum of $10,000, payable on January 19th, 1927, with interest at six per cent. per annum. This bond and mortgage were assigned by the bank to James C. White, who was the complainant in this cause when the bill to foreclose was filed on August 13th, 1930.
There was attached to the last mentioned insurance policy a New Jersey standard mortgagee clause, with loss payable to First National Bank and Trust Company of Woodbury, New Jersey, as mortgagee. No assignment of this policy was made by William C. Evans to W.C. Evans Company.
On August 24th, 1929, a fire occurred on this farm, resulting in a partial destruction of the dwelling house and the total destruction of the barn and wagon house insured under the last mentioned policy. This fire also destroyed household *Page 180 
furniture and other personal property, the latter insured under the first mentioned policy. Adjusters of the company went to the scene of the fire on the day after it occurred, and the company's assistant secretary and another adjuster were there on September 20th, 1929; on the latter date, the fire loss was gone over and a memorandum was made by the assistant secretary as to the items of loss. The amount of the loss was never disputed by the company. The company, however, afterward refused to pay any loss under these two policies.
Two suits were brought against the insurance company in the New Jersey supreme court, one by the First National Bank and Trust Company of Woodbury, New Jersey, the mortgagee, on January 31st, 1930, to recover for the loss on the buildings insured under one of these policies; the other suit by William C. Evans, on August 22d 1930, to recover for the loss on the personal property insured under these policies. Negotiations were had between the insurance company and the mortgagee, resulting on June 17th, 1930, in the assignment by the bank of the bond and mortgage now under foreclosure, to James C. White, the original complainant herein. The consideration for this assignment was $10,000 and the money representing the consideration was the money of the insurance company, and the transaction was effected through a check made by the insurance company to the order of James C. White and endorsed by him over to the bank.
The conclusion must be reached from the evidence, that the insurance company took over this mortgage through its agent White, by virtue of the provision in the mortgagee clause attached to the policy, which reads as follows:
"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that as to the mortgagor or owner no liability therefore existed, this company shall, to the extent of such payment, be thereon legally subrogated to all the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer *Page 181 
of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of its claim."
It was not taken as an investment and while there was an absolute assignment, the consideration represented only the principal sum then due on the mortgage, although interest had accrued and was unpaid on this mortgage from July 20th, 1928.
The foreclosure proceedings as originally instituted by the complainant, White, went to a final decree, resulting in an execution, but before the premises were sold, an order was made vacating the decree and permitting a defense. The cause was referred to Vice-Chancellor Leaming and when it came on for final hearing before him on March 15th, 1932, it was continued pending the disposition of a suit at law which he assumed affected this cause. I am convinced from a consideration of the circumstances, that the suit which was afterward tried was not the suit which he had in mind at the time of the continuance; he may have had in mind the suit by the bank as mortgagee against the insurance company, which suit was discontinued after the asisgnment of the mortgage.
The suit in the New Jersey supreme court by William C. Evans against the company, to which I have already referred, was tried on May 26th, 1932, as happened, before me sitting as circuit court judge, and resulted in a verdict for William C. Evans, plaintiff therein, for the sum of $6,303.36, which verdict was affirmed by the court of errors and appeals on January 31st, 1933, in an opinion written by Mr. Justice Trenchard. Evans v.Farmers Reliance Insurance Co., 110 N.J. Law 159.
While the latter suit was pending, William C. Evans, for a good consideration, by assignment dated July 17th, 1931, assigned his interest in these policies as affecting the personal property, to Joseph H. Evans, and by another assignment, dated June 1st, 1932, he assigned the judgment recovered by him against Farmers Reliance Insurance Company, to Joseph H. Evans. The consideration paid by Joseph H. Evans for these assignments is not disputed, and is an amount equal to *Page 182 
or somewhat in excess of the amount due on the judgment, and includes attorney's fee which he obligated himself to pay. After the affirmance of that case by the court of errors and appeals, and on February 27th, 1933, the then complainant, James C. White, filed an amended bill in this court in which he disclosed that while the assignment of mortgage from the bank was taken in his name, it was done in trust for the insurance company, which company was then substituted as complainant on March 2d 1933; said amended bill seeks to apply the amount of the judgment recovered by William C. Evans and assigned to Joseph H. Evans, on the amount due under the bond and mortgage so assigned. Afterward by an order entered by consent, the insurance company paid into this court the full amount of this judgment.
The defendants William C. Evans and W.C. Evans Company, by counter-claim, seek to offset on the bond and mortgage under foreclosure, the amount of the fire loss on the buildings insured under the policy of the company. A counter-claim was also filed by these defendants against the First National Bank and Trust Company of Woodbury, New Jersey, which, however, was abandoned. Evidence on the part of the defendant, which is undisputed, establishes the amount of loss to the buildings insured by the company to be $8,021.97.
This court has jurisdiction to determine the liability of the complainant, Farmers Reliance Insurance Company, to the insured, William C. Evans, if such liability exists in this cause, without the intervention of a suit at law. The complainant has submitted to the jurisdiction of this court; the amount of loss under the policy was not controverted by evidence submitted by complainant, and William C. Evans, the insured and the beneficial owner of this farm at the time of the occurrence of the fire, and the person who actually paid the premium on the policy, is entitled to interpose his defense to the extent of the liability, and this court can determine the amount of such liability in this cause as was done by Vice-Chancellor Bigelow in Selray Investment Co. v.Massimino, 110 N.J. Eq. 300. *Page 183 
One of the questions to be determined is whether the company was relieved of liability to the defendant William C. Evans, under the policy in question in this cause by reason of a provision in the policy reading:
"The entire policy * * * shall be void * * * if any change other than by death of an assured takes place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured or otherwise * * *."
The only change which took place after the issuance of this policy was the change in the title to the farm by a conveyance to W.C. Evans Company. The possession of the farm was in the assured; he continued to occupy and operate it the same as he had before the incorporation of the company; and to all intents and purposes, so far as affecting any fire hazard, the conditions remained the same. Evans was the owner of all the stock of the W.C. Evans Company and may well be considered the equitable owner of the farm under the circumstances as they appear in this cause. The insurance company suffered in no way by reason of the change in the paper title to this farm, and in no way was subjected to any greater hazard. There was no change of the beneficial ownership of this farm; if anything, the assured had a greater interest in it after the conveyance than he had before because the transaction resulted in the elimination of the inchoate right of dower of Evans' wife, giving him the full ownership of the farm through his ownership of the entire capital stock of W.C. Evans Company.
The insurance company, in order to defeat the claim of the defendants to an offset of the amount of the fire loss to the buildings, relies almost entirely upon the provision of the policy which I have quoted; such a defense, where the circumstances are as in this case, should not be permitted to work a forfeiture of the defendants' rights under the policy. The defense is technical; there is no evidence of any fraud practiced upon the insurance company; in fact, there is every evidence of the absolute good faith of the defendants. Such *Page 184 
a provision in this insurance policy, tending to create a forfeiture, should be construed most strongly against the company. In cases where a forfeiture is declared by reason of change of title or interest, it is usually found that the insured has a diminished interest in the protection of the property against fire, but in this case, the defendant William C. Evans had possibly a greater interest in the property, as I have already said, than before it was conveyed to W.C. Evans Company. The entire loss would fall upon him, he being the owner of all the stock in the company. This reasoning is illustrated I feel in the opinion of Judge Jess, affirmed by the court of errors and appeals, in Evans v. London Assurance Corp.,107 N.J. Law 183.
In view of the ownership by William C. Evans of all the stock in the W.C. Evans Company, it is clear that by that ownership he had the beneficial ownership of the real estate which he had conveyed to it; he was the substantial beneficial owner of this real estate.
Even as respects ownership of property, it is clear that although title to corporate property is in the corporation, the substantial beneficial ownership in the case of private corporations is, in equity, for corporate purposes in the members or stockholders who own the corporation, and this obvious fact must be recognized in equity for the purpose of distribution of the assets on a dissolution of the corporation, and in other cases in which such view is necessary to do justice. 14 Corp.Jur. 62 § 26.
The amount of the loss under this insurance policy should be offset against the amount found to be due the complainant on the bond and mortgage, notwithstanding certain circumstances surrounding the assignment from the bank to White.
Some stress has been laid upon the fact that there was delivered at the time of the settlement between the bank and the insurance company, a declaration of no offset, executed by W.C. Evans Company; this declaration, however, could hardly be construed as waiving any rights under this insurance policy as against the insurance company because the insurance company is not named as a party and its effect *Page 185 
would be to admit that there was due on the bond and mortgage held by the First National Bank and Trust Company of Woodbury, New Jersey, the sum of $10,000 with interest from July 20th, 1928. At that time the suit was pending in the New Jersey supreme court by the bank to recover under this policy, but I am satisfied from the evidence, that William C. Evans, either individually or on behalf of the W.C. Evans Company, had no intention whatever of waiving any claim for fire loss to the buildings insured under the policy, and such papers as he signed at the request of counsel for the bank cannot be said to have been for the benefit of the insurance company except to confirm the amount due on that mortgage to the bank, and the assurance of the title of the property clear of prior encumbrance at the time of the execution of the mortgage.
The complainant is entitled to a decree for $10,000, the amount paid to the First National Bank and Trust Company of Woodbury, New Jersey, upon the assignment of the mortgage, with interest from June 17th, 1930, the date of the assignment; to which should be added the taxes paid on September 8th, 1930, in the amount of $1,407.87; and the amount paid in settlement of a tax certificate on March 28th, 1933, of $1,526.36, with interest from the dates when such respective payments were made.
The defendants are entitled to have the amount of such decree offset to the extent of $8,021.97, representing the established loss to the buildings insured by the complainant under its policy, with interest.
As to the fund now deposited in court, representing the amount of the judgment obtained by William C. Evans against the insurance company complainant, and assigned to defendant Joseph H. Evans, it should not be applied as a credit on the mortgage of complainant. While the complainant charged in the bill that William C. Evans was insolvent and the property covered by the mortgage was inadequate in value to satisfy the mortgage under foreclosure, no evidence was offered to support this claim; neither is there any evidence that the assignment of this judgment was done in fraud *Page 186 
of creditors. The assignment was a bona fide assignment for a proper consideration, made long before any claim was set up by the complainant, and without notice to Joseph H. Evans of any such claim.
The bill will be dismissed as to Joseph H. Evans and the fund on deposit in court directed to be paid to him.